

**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | \* | |
| Beverly Wong, | \* | Case No. 18-17666-LSS |
| Debtors. | \* | Chapter 11 |
| | \* | |

### MEMORANDUM OPINION

Before the Court[1] is the Amended Disclosure Statement[2] (the "Disclosure Statement"), filed by Debtor, Beverly Wong, the Objection to Amended Disclosure Statement,[3] filed by Bank of America, N.A. (the "Bank"), the Motion for Relief from the Automatic Stay[4] (the "Stay Motion"), filed by the Bank, and Debtor's Opposition[5] thereto. The Court held a hearing on these

---

[1] This Court has jurisdiction to hear this matter, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52, made applicable to this contested matter by Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent appropriate, the findings of fact set forth herein shall be deemed conclusions of law and *vice versa*.

[2] Dkt. No. 77.

[3] Dkt. No. 87.

[4] Dkt. No. 67.

[5] Dkt. No. 75.

matters on March 5, 2019.  At the hearing, the parties stipulated to the admission of exhibits, Debtor's counsel proffered Debtor's testimony, and the Court heard oral argument.

I.    **Findings of Fact.**

In September 1997, Debtor and her husband, Tien Wong, purchased a residential house in Montgomery County, Maryland, known as 146 Grafton Street, Chevy Chase, Maryland (the "Property").  At the time of purchase, Debtor and Mr. Wong intended to and did occupy the Property as their principal residence. In April 2002, Debtor and Mr. Wong executed a promissory note (the "Note") in the amount of $1,000,000.00 in favor of the Bank.  The parties also executed a refinance deed of trust (the "Deed of Trust"), which provides the Bank with a first-priority lien against the Property.  The Deed of Trust contains a Second Home Rider (the "Second Home Rider").  The Second Home Rider provides that "Borrower shall occupy, and shall only use, the Property as Borrower's second home.  Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times . . .."  However, Debtor proffered that, while she had resided in Florida in 2001 and part of 2002, she primarily resided in the Property at the time she executed the Note and Deed of Trust (collectively, the "Loan Documents").

By its own terms, the Note fully matured on April 25, 2009.  Debtor, Mr. Wong, and the Bank executed four Modification and Extension Agreements for the Note.  The parties entered the fourth and final Modification and Extension Agreement on October 31, 2013 (the "Fourth Extension Agreement").  Pursuant to the Fourth Extension Agreement, all amounts owed by Debtor and Mr. Wong under the Note were due by August 31, 2014.  Debtor and Mr. Wong defaulted on the Note by not repaying the Note in full by the maturity date.

On March 22, 2017, the Bank filed a foreclosure action against the Property in the Circuit Court for Montgomery County, Maryland. The Bank scheduled a foreclosure sale of the Property for June 29, 2018.

Debtor initiated this Chapter 11 bankruptcy case on June 6, 2018. The Property was Debtor's principal residence on the petition date. Debtor has made monthly adequate protection payments to the Bank of $3,466.00 since filing this case. The Bank filed a timely proof of claim in this case asserting a secured claim of $866,42.66 (the "Claim"). Debtor has not objected to the Claim. The value of the Property on the petition date was at least $1,850,000.00.

On February 22, 2019, Debtor filed her Amended Plan of Reorganization (the "Plan") and the Disclosure Statement. Debtor seeks to modify the Bank's rights through the Plan. Debtor proposes to pay the Claim over the life of the Plan and a monthly principal and interest payment of $4,100.00. The Plan further provides for full payment of the Claim by November 30, 2020. The Bank objects to the Disclosure Statement on the ground that the Plan is patently unconfirmable because it seeks to restructure a matured loan secured solely by Debtor's principal residence in violation of 11 U.S.C. § 1123(b)(5).[6] Debtor responds that the Bank's rights are modifiable because the Second Home Rider establishes that the Property was not Debtor's principal residence at the time Loan Documents were executed. Further, Debtor argues that Bank knowingly waived protection under § 1123(b)(5) by including the Second Home Rider in the Deed of Trust.

At the hearing, the Court informed the parties that, in the interest of simplicity and expedience, it would take the issue of whether the Bank's rights are subject to modification

---

[6] The Bank also objects to the Disclosure Statement on the ground that it lacks adequate information. In light of the ruling herein, the Court will not reach that issue.

3

through the Plan under advisement. The Court further informed the parties that it would recommence the hearing, if necessary, following issuance of the Court's ruling on that issue.

## II.  Discussion.

The Court must determine whether the Plan is unconfirmable based on the modification of the Bank's rights thereunder. While courts ordinarily reserve confirmation issues for the confirmation hearing, a court may disapprove a disclosure statement where the underlying plan is clearly unconfirmable.[7] If the Plan violates § 1123(b)(5)'s anti-modification provision, it would be clearly unconfirmable. Courts are split on the proper temporal focus for determination of the debtor's principal residence under § 1123(b)(5). The Fourth Circuit has not weighed in on the controversy.[8] Some courts have adopted the petition date approach, whereby the court determines the debtor's principal residence based on the state of affairs as of the petition date. Other courts have adopted the loan origination approach, which focuses on the time the parties created the relevant security interest. Those courts look to the applicable loan documents to answer the question.

"'[I]nterpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself.'"[9] For terms defined under the Bankruptcy Code, the Court applies the Code's definition.[10] For terms not defined in the Bankruptcy Code, the Court looks

---

[7] *In re CRIIMI MAE, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000). *See also In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-55 (3d Cir. 2012).

[8] It appears that this is an issue of first impression for this Court. *See In re Salmeron*, 09-25864-TJC, 2010 WL 1780119, at *2 (Bankr. D. Md. May 4, 2010) (declining to decide the temporal issue with respect to the identically worded § 1322(b)(2)).

[9] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) (quoting *Ransom v. FIA Card Services, N. A.*, 131 S. Ct. 716, 723(2011)).

[10] *Schwab v. Reilly*, 560 U.S. 770, 783 (2010).

to their ordinary meaning, which may be discerned from dictionaries.[11]  Only when the statutory language is ambiguous on a particular point, may the court consider legislative history.[12]

Section 1123(b)(5) provides that a Chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."[13]  Section 101(13A) defines "debtor's principal residence" as "a residential structure if *used* as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property."[14]  Accordingly, if the Property is Debtor's principal residence, as defined in § 101(13A), the Plan is unconfirmable. The parties disagree about the temporal focus of the Court inquiry.

Many courts adopting the petition date approach highlight that approach's consistency with resolving other claim issues as of the petition date.  *In re Abdelgadir*,[15] the Ninth Circuit Bankruptcy Appellate Panel held as follows:

> Based on the grammatical structure of the statute, the words "secured only by a security interest in real property that is the debtor's principal residence" modifies "claim " and describes the type of claim that is excepted from modification. . . . The plain language of § 1123(b)(5) excepts a particular type of claim from modification. As discussed above, a creditor's right to payment, whether it later is deemed secured or unsecured depending on the value of the collateral, is fixed at the petition date. Therefore, our statutory analysis leads us to conclude that the determinative date for whether a claim is secured by a debtor's principal residence is, like all claims, fixed at the petition date.[16]

---

[11] *Id.*

[12] *In re Durant*, 586 B.R. 212, 218 (Bankr. D. Md. 2018)

[13] 11 U.S.C. § 1123(b)(5).

[14] 11 U.S.C. § 101(13A) (emphasis added).

[15] 455 B.R. 896 (Bankr. App. 9th Cir. 2011).

[16] *Id.* at 903.

In *In re Crump,*[17] the Bankruptcy Court for the District of South Carolina reasoned that because the amount of a claim and its status as either secured or unsecured is determined as of the petition date, it makes sense to determine the nature of the security interest at that time.[18] *In re Cohen,*[19] the Bankruptcy Court for the District of New Hampshire held "that since 'claim' is a word of art in bankruptcy that describes a creditor's right to payment in a bankruptcy proceeding, the Court should look to the status of the property as collateral as of the petition date and not the date of the mortgage."[20]

Conversely, courts adopting the loan origination approach often focus on the parties' intent upon their creation of the security interest as well as the perceived legislative intent behind the adoption of the provision. In *In re Scarborough*, the Third Circuit held that "the critical moment is when the creditor takes a security interest in the collateral."[21] The Third Circuit reasoned that "[i]t is at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date."[22]

Many courts following the Third Circuit's lead believe the legislative history supports the loan origination approach.[23] In *Nobelman v. American Sav. Bank*,[24] the Supreme Court

---

[17] 529 B.R. 106 (Bankr. D.S.C. 2015).

[18] 529 B.R. at 110. *See also In re Brinkley*, 505 B.R. 207, 214 (Bankr. E.D. Mich. 2013) ("Using this petition-date approach is consistent with the fact that many things relating to a bankruptcy case are fixed as of, or measured as of or from, the petition date…").

[19] 267 B.R. 39, 43 (Bankr. D.N.H. 2001)

[20] *Id.* at 43. (*citing In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D.N.H. 1994)). *See also In re Berkland,* 582 B.R. 571 (Bankr. D. Mass. 2018).

[21] 461 F.3d 406, 412 (3d Cir. 2006) (interpreting § 1322(b)(2)).

[22] *Id.* (*quoting In re Bulson*, 327 B.R. 830, 846 (Bankr.W.D.Mich.2005)).

[23] *See In re Christopherson,* 446 B.R. 831, 835 (Bankr. N.D. Ohio 2011).

[24] 508 U.S. 324 (1993).

addressed whether § 1322(b)(2), § 1125(b)(5)'s twin in Chapter 13, prohibited bifurcation of claims secured by the debtor's principal residence. In a concurrence, Justice Stevens explained the provision's legislative history as follows:

> At first blush it seems somewhat strange that the Bankruptcy Code should provide less protection to an individual's interest in retaining possession of his or her home than of other assets. The anomaly is, however, explained by the legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market.[25]

In *In re Proctor*,[26] the court addressed a factual scenario like the matter before the Court. In adopting the loan origination approach, that court held as follows:

> [T]his court's conclusion rests upon the thoughtful and useful discussions set out by proponents of both views, above, and also on the fact that courts within [the fourth] circuit frequently reach decisions in related "determination of principal residence" contexts by turning first to the loan documents. That focus on what the parties originally bargained for, and what those parties understood their rights to be, strikes this court as the most appropriate starting point when a debtor's principal place of residence is in dispute.
>
> Here, it is undisputed that the debtor's loan was expressly conditioned upon the property being used as a second home, and the interest rate charged by [the lender] reflects this. [The lender] acknowledged its higher risk factor and was compensated for it on terms established by [the lender]. Without delving into the statute's legislative history and related considerations of congressional intent, the court points out the obvious, which is that a lender's expectations in extending a loan are best captured by the language of loan documents that, invariably, the lender itself provided.[27]

After thoroughly considering the reasoning of courts on all sides of this controversy, the Court concludes that the petition date approach is most well-reasoned. The Court agrees with *Abdelgadir*, *Crump*, and *Cohen* that it is consistent and convenient to establish all facts regarding the nature, extent, and status of claims as of the petition date. More importantly, however, the

---

[25] *Id.* at 332 (Stevens, J., concurring).

[26] 494 B.R. 833 (Bankr. E.D.N.C. 2013).

[27] *Id.* at 840.

7

Court finds the statutory language clearly favors the petition date approach. The operative verb in § 101(13A) is "used." It is debtor's use, not the lender's intent, or contractual language, that distinguishes "the debtor's principal residence" from other real property. The use of "is" in § 1123(b)(5) clearly suggests that the focus is on the present.[28] Grafting § 101(13A)'s definition into § 1123(b)(5), the anti-modification provision applies to a claim that is secured only by a security interest in real property *that is used* as the principal residence by the debtor. In bankruptcy, the petition date is often a proxy for the present, and, here, the petition date is the only practical date to use for the present. It is true that the operative verb in § 101(13A), used, is past tense. However, when read in proper context within § 1123(b)(5) it remains clear that the focus is on the present. Finally, the Court concludes that the petition date is consistent with the determination of a "principal[29] residence," of which "there can be only one."[30] A debtor may own more than one home purchased with a principal residence loan, however, the debtor would only have one *principal* residence on the petition date.[31]

The loan origination approach is inconsistent with § 101(13A)'s focus on the debtor's use of the property and § 1123(b)(5)'s focus on the present. Sections 101(13A) and 1123(b)(5) are clear on these points. Nothing in either § 101(13A) or § 1123(b)(5) mentions the wording of the

---

[28] Merriam-Webster defines *is* as the "*present tense* third-person singular of BE." Is, https://www.merriam-webster.com/dictionary/is (visited March 7, 2019). *See also In re Berkland*, 582 B.R. 571, 577 (Bankr. D. Mass. 2018) ("Both emphasized words, "claim" and "is," point to the present, not the past.").

[29] Merriam-Webster defines *principal* as "most important, consequential, or influential." Principal, https://www.merriam-webster.com/dictionary/principal (visited March 7, 2019).

[30] "There can be only one." is the oft repeated tagline for the 1986 film *Highlander* and the spin-off television series of the same name.

[31] *See generally In re Roemer*, 421 B.R. 23, 24 (Bankr. D.D.C. 2009) (holding that deed of trust which obliged the borrower to use the subject property as the borrower's principal residence for at least one year was not subject to the anti-modification provision after that one-year period).

loan documents or the lender's intent.  Many courts that have adopted the loan origination date approach were convinced that the drafters intended to provide maximum protection to all and only creditors holding loans that originated as principal residence loans.  If that were true, the drafter could have easily used such language.  "It is not for [the Court] to rewrite the statute . . . to achieve what we think Congress really intended."[32]

Debtor further argues that the Bank waived its right to protection under the anti-modification provision through the inclusion of the Second Home Rider in the Deed of Trust.  Under Debtor's argument a property may only obtain the status of "the debtor's principal residence" through the loan documents, but, presumably, could lose such status based on the debtor's use.  As with the loan origination date approach, such a rule eschews the statutory text's focus on the debtor's use of the property.  Further, nothing in the Second Home Rider reads as a waiver of the Bank's rights to avoid modification in the event the Property became Debtor's principal residence.

### III.  Conclusion.

For the reasons stated above, the Court finds and concludes that it should deny approval of the Disclosure Statement because the Plan is unconfirmable.  Further, the Court has determined that it should allow Debtor an opportunity to either convert or dismiss this case and that the Court should recommence the hearing on the Stay Motion as soon as practicable.  The Court will enter an order commensurate with this memorandum opinion.

cc:    Debtor
       Debtor's Counsel
       U.S. Trustee
       Bank of America, N.A.

**End of Order**

---

[32] *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 215 (2010)